JMK/MS:JSC
F. #2011R00297

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

| | |
|---|---|
| UNITED STATES OF AMERICA | MEMORANDUM OF LAW |
| - against - | Docket No. 11-CR-347 (SLT) |
| MAYER GINDI, | |
| Defendant. | |

– – – – – – – – – – – – – – – – –X

On May 27, 2011, the defendant Mayer Gindi pled guilty to a two-count information in this case. Count One charged the defendant with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, and Count Two charged the defendant with bankruptcy fraud, in violation of Title 18, United States Code, Section 152(3). Dkt. Entry No. 13. Now, on the eve of sentencing, the defendant seeks to vacate his guilty plea to Count Two. The defendant's motion should be denied for the reasons stated below.

BACKGROUND

From at least 2006 to 2009, the defendant engaged in fraudulent conduct in connection with the sale of real property he owned in New Jersey. Presentence Investigation Report ("PSR") ¶¶ 1, 2. Specifically, the defendant asked an individual named Sammy Shaker to recruit individuals to purchase properties owned by the defendant, knowing these individuals had no intention of living at the properties or making mortgage payments. Id. ¶ 1. After the closing, the defendant paid the individual who had purchased the property a portion of the proceeds he had received from the sale of the property. Id. The defendant then retained the rest of the

1

proceeds, and did not make payments to any creditors. Further, in an attempt to abuse the bankruptcy process so as to prevent creditors from taking title to his properties, the defendant falsified filings with the United States Bankruptcy Court. Id. ¶ 2. Specifically, the defendant, through his company Tri-State Investments Assets LLC ("Tri-State"), had purchased two properties located in New Jersey in 2005. Id. ¶¶ 16-17. The defendant, however, failed to make a single payment on the loans used to purchase these properties and, in turn, the properties were foreclosed upon by creditors. Id.

In an attempt to stop these creditors from taking legal title to these properties, the defendant filed for bankruptcy in the United States Bankruptcy Court for the District of New Jersey. The defendant submitted materially false bankruptcy documents claiming that within the preceding year, Tri-State had neither been a party to a lawsuit nor had any property sold at a foreclosure sale. Id. ¶¶ 2, 17. Both of these statements were lies, because Tri-State had been a party to a suit in the Superior Court of New Jersey the previous year, and the defendant's properties were being sold at a foreclosure Sherriff's sale. Id. Indeed, the defendant himself informed the government, in a February 19, 2015 meeting, that at the time he filed for bankruptcy he knew that he was being sued in New Jersey and that he had received mail regarding both that lawsuit and the Sherriff's sale.

As a result of the fraudulent bankruptcy filings, the bankruptcy court reversed the foreclosure sale of the defendant's two properties and the defendant wrongfully retained title to them. Id. ¶ 18. In turn, the rightful owners could not collect rent on these properties. Id. It was not until 2010 that the new owners were able to obtain title to the properties. Id. The new owners lost at least $70,000 in rental payments that they could have collected had the defendant not filed for bankruptcy. Id.

The defendant pled guilty to Counts One and Two of the information on May 27, 2011 before Magistrate Judge Cheryl L. Pollak. Dkt. Entry No. 13. On October 24, 2014, this Court accepted the defendant's guilty plea, finding that the defendant entered it knowingly and voluntarily, and that there was a factual basis for the plea. Dkt. Entry No. 42. On January 7, 2015, Albert Dayan, Esq. entered his appearance as counsel to the defendant for sentencing proceedings. The defendant then requested a one-month extension to file his sentencing memorandum. The Court granted the motion, ordering that the defendant submit his sentencing memorandum by February 11, 2015, and scheduling sentencing for February 25, 2015. On February 10, 2015, the defendant filed a letter seeking to adjudicate a motion to vacate his guilty plea to Count Two (the bankruptcy fraud count). Shortly thereafter, the defendant requested to meet with the government to explain why he wished to vacate his plea to Count Two.

On February 19, 2015, the defendant and his counsel met with the government. The defendant began by reaffirming his plea of guilty to Count One of the information, and stated that he would not seek to withdraw his plea to that count because he is in fact guilty. The defendant and his attorney both signed a statement to that effect. The defendant then proceeded to explain that he was seeking to vacate Count Two of the information (the bankruptcy fraud count) due to an administrative technicality regarding his signature on the bankruptcy filing. He explained that an attorney worked on his bankruptcy filing and that the attorney had signed several of the pages on the defendant's behalf. The defendant pointed to various signatures claiming that he had not signed his own name.

During the same meeting, the defendant falsely informed the government that he had filed for bankruptcy because the ice cream store he "owned" was failing. When challenged about whether he in fact owned any sort of ice cream store, the defendant changed his story. He

3

stated that he was responsible for the ice cream store's utilities and that expense had caused him to file for bankruptcy. After further questioning, the defendant admitted that he knew that the bankruptcy filing would disrupt his creditor's plans to foreclose on the properties.

The defendant now appears to have changed his story yet again, making no further mention of his administrative technicality or the expensive ice cream store utilities. Rather, he now seeks to vacate his plea to Count Two by claiming that his omissions from his bankruptcy filing were not material.

## ARGUMENT

The defendant's request to vacate his plea to Count Two should be denied. The defendant's conduct here more than adequately supports the defendant's guilty plea to Count Two. See United States v. Smith, 160 F.3d 117, 121 (2d Cir. 1998) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3), but "this language does not require the district court to weigh any evidence or predict what a jury would do with the case."); id. ("The court must assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." (internal quotations omitted)). As set forth below, the defendant's argument that his failure to disclose the foreclosure of two of his properties in his bankruptcy filing was "immaterial" in any sense is perverse: the defendant's omissions were not only material but core to his bankruptcy petition, and his actions reflect his modus operandi of playing fast and loose with the law to his own benefit.

Generally, liability under Title 18, United States Code, Section 152(3) requires proof of: "(1) a declaration, certificate, verification or other statement made under penalty of perjury; (2) in or in relation to a bankruptcy case or proceeding; (3) which is false; (4) material;

4

and (5) made knowingly and fraudulently." In re Howard Komendant CPA, P.C., No. 09-31752, 2012 WL 1098550, at *3 (Bankr. D.N.J. 2012). See In re Robinson, 506 F.2d 1184, 1187 (2d Cir. 1974) (recounting the elements of proof to be a knowing and fraudulent false statement, in relation to a bankruptcy proceeding, with a materiality element); 1–7 Collier on Bankruptcy ¶ 7.02[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); see also United States v. McCormick, 72 F.3d 1404, 1406 (9th Cir. 1995) (citing United States v. Lindholm, 24 F.3d 1078, 1082-83 (9th Cir. 1994)). Here, it is clear from the record and the defendant's own plea allocution that he made a statement under penalty of perjury in his application for bankruptcy, and that the statement was false and made knowingly and fraudulently. The only element challenged by the defendant is whether the statement or omission was material.

As an initial matter, it is unclear what the defendant's understanding of materiality is. Namely, the defendant argues that the omission of the foreclosure and/or litigation was not material to anything in the bankruptcy action, the foreclosure litigation and/or the current case.[1] The defendant fails to actually define materiality in this context or adequately explain why his omission was not material under the law. The Second Circuit has held that "the words of the statute requiring that the testimony be given 'knowingly and fraudulently' mean no more than an 'intentional untruth in a matter material to the issue which is itself material.'" In re

---

[1] See Affirmation by Albert Y. Dayan at 1 ("…when in fact the statement was not material to the bankruptcy proceeding"); id. at 2, as to the issuance of the stay (The "stay of proceedings is not depending in any way on whether or not the petitioner had or had not revealed the existence of the state litigation and/or the foreclosure"); id. as to the creditors who had foreclosed on the defendant's properties and the related Sherriff's sale (The "temporary stay . . . of the foreclosure proceedings, including The Sherriff's Sale . . . does not depend in any way on whether petitioner had or had not revealed the state litigation and/or foreclosure proceedings."); and id. at 1, as to the government's theory of prosecution ("It was the government's theory of prosecution that this failure to list the uncontested foreclosure had resulted in the Bankruptcy Court's temporary forestalled of [sic] the foreclosure to defendant's benefit."). Ultimately, the defendant's expert, Timothy Neumann, relies heavily on the concept involving discharge of debt, under Title 11, United States Code, Section 727, see Letter from Timothy P. Neumann at 2.

5

Robinson, 506 F.2d at 1187 (quoting In re Melnick, 360 F.2d 918, 920 (2d Cir. 1966)). This District has held, in the context of Title 11, United States Code, Section 727 proceedings (as referenced in the defendant's motion), that "any matter bearing on the discovery of estate property or the disposition of the debtor's property is material." In re Abramov, 329 B.R. 125, 134 (Bankr. E.D.N.Y. 2005) (citing In re Robinson, 506 F.2d 1184, 1188 (2d Cir. 1974)). "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." In re Robinson, 506 F.2d at 1188–89. See also United States v. Mitchell, 528 F.3d 1034, 1040-41 (8th Cir. 2008) ("We have noted that materiality is readily established and *does not require a showing that the creditors were harmed* by the false statements. Because they are pertinent to his financial transactions, [defendant's] statements relating to his employment and income are material. Statements that may impede an investigation into the debtor's financial history are also material." (emphasis added) (internal citations omitted)). Cf. In re Bartel, No. 05-13134, 2009 WL 2461727, at *6 (Bankr. D. Mass. 2009) ("[A] fact is material when it relates to a debtor's business transactions or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." (citing In re Zicaro, No. 08-04062, 2009 WL 1795302 at *1 (Bankr. D. Mass. June 22, 2009))); In re Wills, 243 B.R. 58, 62 (9th Cir. BAP 1999) (A fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of the debtor's property."); United States v. Gellene, 182 F.3d 578, 587 (7th Cir. 1999) ("The statute is therefore construed to require that the false oath be in relation to some material matter. That material matter about which the misrepresentation was made could of course be the debtor's business transactions, the debtor's estate assets, the discovery of those assets, or the history of the debtor's financial transactions." (internal citation omitted)).

The defendant's omissions from his bankruptcy filing were not only material but fundamental to the core issue: the disposition of the defendant's property and resolution for the various creditors seeking to recover from the defendant's fraudulent scheme. The defendant did not omit or falsify a non-substantive detail in his filing. Cf. United States v. Beach, 228 F. App'x 816, at *5 (10th Cir. 2007) (even transposed, and thereby false, social security numbers constituted a material false statement in a bankruptcy petition); Gellene, 182 F.3d at 587 ("[I]n many cases a false social security number or a false prior address" may be material.). Nor did the defendant "forget" some outdated or irrelevant litigation; he intentionally omitted a concurrently impending foreclosure action. Outstanding litigation matters are a required disclosure in any bankruptcy petition and related omissions or statements are material. See United States v. Hargrove, 98 F. App'x 192, 194 (4th Cir. 2004) (affirming conviction for false declarations regarding outstanding civil judgments in Schedule F of bankruptcy petition). Particularly here, the foreclosure was not only relevant to the bankruptcy filing; the two were wedded inextricably. It is clear from the evidence that the foreclosure the defendant omitted from his bankruptcy filing was *the very event* that "led to [the defendant's] decision to file for bankruptcy." In re Boccia, No. 07-75083-478, 2009 WL 891766, at *2 (Bankr. E.D.N.Y Mar. 26, 2009). The defendant declared bankruptcy on the eve of the foreclosure of the two properties, in an effort to stop the sale. See United States v. Roberts, 134 F. App'x 470, 472-73 (2d Cir. 2005) (holding that that even the defendant's use of a false social security number was a material misstatement and noting particularly the defendant's use of a bankruptcy petition to stall creditors "lawful foreclosure on the property," in adding a "substantial interference" enhancement). To argue that one is immaterial to the other is disingenuous.

The defendant clearly undermined the integrity of the bankruptcy process with his intentional, material inaccuracies. See Gellene, 182 F.3d at 587 ("[W]hether the deception at issue is aimed at thwarting the bankruptcy court or the parties to the bankruptcy, § 152 is designed to protect the integrity of the administration of a bankruptcy case."). "It is crucial for the successful administration of the estate for the debtor to have provided truthful information in his petition and schedules." In re Boccia, at *4 (citing In re Dubrowsky, 244 B.R. 560, 572 (E.D.N.Y. 2000); In re Braathen, 364 B.R. 688, 698 (Bankr. N.D. 2006)). "When a Debtor's bankruptcy petition is being completed it is crucial for the Debtor to be as accurate as possible in order to facilitate the administration of his estate by the Trustee, and to allow his creditors and the Court to have a perspective on said Debtor's financial situation." In re Boccia, at *5. See also In re Bartel, 2009 WL 2461727, at *6 ("The very essence of the Bankruptcy Code is to ensure that complete, truthful, and reliable information is available at the outset of the proceedings."). The defendant was not accurate in his bankruptcy filing and thereby denied his creditors and the courts the full "perspective" on the defendant's "financial situation," In re Boccia, at *5. Without information about the foreclosures, impending litigation, creditors involved in those proceedings, and the imminent foreclosure sale of the defendant's two properties, the bankruptcy court could not fairly or accurately distribute the defendant's assets. Id. Indeed, the defendant's omissions from his bankruptcy filing were intended to deny his creditors their due, and to impact the outcome of the disposition of his properties. In doing so, the defendant "hampered [the] facilitation . . . [of his affairs] and appear[ed] to be playing fast and loose with the bankruptcy process." In re Boccia, at *6. See also In re Tully, 818 F.2d 106, 110 (1st Cir. 1987) ("Section 727(a)(4)(A) seeks to ensure that a Debtor does not play fast and loose with his assets or with the reality of his affairs.").

8

Contrary to the defendant's assertion, his omissions were not a blip on the radar. Critically, the defendant exercised a pattern of material untruths in a consistent effort to abuse the legal and judicial system and to defraud all parties to his own advantage. See United States v. Roberts, 134 F. App'x 470, 472-73 (2d Cir. 2005) (applying "substantial interference" enhancement where court found the defendant "precipitated a needless bankruptcy proceeding, which lasted two and one-half years" and resulted in an "unquestionably substantial" "expenditure of court resources"); United States v. Lawrence, 189 F.3d 838, 846-47 (9th Cir. 1999) ("[A]ll of defendant's acts were done over a period of years for the purpose of defrauding creditors, business colleagues, and eventually the Bankruptcy Court. Each was done with the requisite criminal intent to defraud . . . [and] was part of a pattern and practice by the defendant . . . . [His] false statements and concealments were part of an overall pattern and scheme to keep his assets from his creditors and to keep those assets for himself."). The defendant's entire mortgage fraud operation and attempt to stop the foreclosure sale of his properties were all part of his scheme, as were his bankruptcy filing omissions. Indeed, with the instant application, the defendant continues to try to game the system and delay legal proceedings here. As noted above, the defendant devised this attempt to vacate his plea to Count Two on the eve of sentencing; his story as to why he should be permitted to withdraw his plea to that count has continually shifted, further delaying progress in this matter.

Additionally, just last year, the Honorable Kiyo A. Matsumoto made adverse credibility findings as to the defendant and determined that he made false and perjurious statements in court proceedings before her and in a sworn declaration submitted to her. Isaac Gindi v. United States, Nos. 14-CV-755, 11-CR-294, 2014 WL 2155025 (E.D.N.Y. May 21, 2014); Isaac Gindi v. United States, Nos. 14-CV-755, 11-CR-294, 2014 WL 508135 (E.D.N.Y.

9

Feb. 5, 2014). Specifically, the defendant testified in a proceeding before Judge Matsumoto, in Isaac Gindi v. United States, where his brother was the defendant. Nos. 14-CV-755, 11-CR-294. In its Memorandum & Order, the court found that "Mayer Gindi knowingly made materially false statements to the court under oath while testifying in the proceeding and in a declaration submitted under penalty of perjury." 2014 WL 2155025, at *2 (E.D.N.Y. May 21, 2014). See also id. at *5 ("[T]he court finds that Mayer Gindi intentionally gave false testimony concerning a material matter—his involvement in and knowledge of Isaac Gindi's bank fraud conspiracy— while testifying before this court."); Isaac Gindi, 2014 WL 508135 (E.D.N.Y. Feb. 5, 2014) (same). Judge Matsumoto further found that many of the defendant's statements to the court contradicted statements that the defendant had made to the government in case-related proffer sessions. 2014 WL 2155025, at *5-*6 ("The statements provided by Isaac Gindi and Mayer Gindi while testifying are contradicted by the statements made by Mayer Gindi and Yitzchok Kaplan during their proffer sessions."). In sum, the defendant has exhibited no respect for this judicial system, the bankruptcy courts or his creditors.

The interests of justice and strong factual basis for the defendant's guilty plea require that his plea to Count Two remain intact. A court in this District has denied a defendant's attempt to vacate a plea where "[a] reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." Walker v. United States, No. CV-92-2253 (CPS), 1992 WL 225580, at *3 (E.D.N.Y. Aug. 31, 1992) (quoting United States v. O'Hara, 960 F.2d 11, 13 (2d Cir. 1992)). Cf. In re Bartel, 2009 WL 2461727, at *6 (denying debt discharge and finding materiality even where the defendant's "bankruptcy petition was prepared in haste due to the threat of foreclosure"). Those factors are

10

all firmly in place here.  See United States v. Berger, 188 F. Supp. 2d 307, 319 (S.D.N.Y. 2002) ("Society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." (internal quotations omitted)).  Accordingly, this Court should deny the defendant's motion and proceed to sentencing on both counts.

## CONCLUSION

For the reasons set forth above, the defendant's motion should be denied.

Dated: Brooklyn, New York
      June 19, 2015

                                    Respectfully submitted,

                                    KELLY T. CURRIE
                                    Acting United States Attorney
                                    Eastern District of New York

            By:    /s/_____
                    Marisa Seifan
                    Jennifer S. Carapiet
                    Assistant United States Attorneys