

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

PT:MMS         *271 Cadman Plaza East*
F. #2011R00297      *Brooklyn, New York 11201*

January 19, 2016

<u>By ECF and Hand</u>

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:  United States v. Mayer Gindi
         <u>Criminal Docket No. 11 CR 347 (SLT)</u>

Dear Judge Townes:

    The government respectfully writes to respond to the defendant's supplemental letter dated November 3, 2015 ("Def. Ltr.") that: (1) raises factual issues relevant to his sentencing to Count One of the above-listed Information, which charged him with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349; and (2) seeks to vacate his guilty plea to Count Two of the Information, which charged him with bankruptcy fraud in violation of Title 18, United States Code, Section 152(3).

    Count One of the Information relates to a mortgage fraud scheme that the defendant perpetrated in connection with the sale of real property he owned in New Jersey. Specifically, the defendant asked an individual named Sammy Shaker to recruit individuals to serve as "straw buyers" who would obtain mortgage loans in order to purchase properties owned by the defendant, knowing that these individuals had no intention of living at the property or making mortgage payments.   After the defendant's sale of the property to a straw buyer closed in the spring of 2006, the defendant paid the straw buyer a portion of the proceeds the defendant received from the sale of the property.   PSR ¶¶ 1, 7-12.   Count Two charged that on March 19, 2009, the defendant made a materially false statement under penalty of perjury in relation to a case filed under Title 11 of the United States Bankruptcy Code.   Specifically, the defendant, as President of Tri-State Investment Assets LLC, fraudulently stated in a Voluntary Petition for Bankruptcy that Tri-State had not been a party

to any lawsuits within one year immediately preceding commencement of the bankruptcy filing when, in fact, the defendant knew that Tri-State had been a party to a suit in the Superior Court of New Jersey, Chancery Division, Hudson County within one year immediately preceding the filing.    PSR ¶ 2.

A.   Factual Inaccuracies in the PSR

Paragraphs 17 and 18 of the PSR state in relevant part:

In March 2009, creditors were awarded the properties in a foreclosure sale. Shortly thereafter, on March 19, 2009, the defendant filed for bankruptcy on behalf of Tri-State in an effort to deny the creditors legal title to the properties. Specifically as noted above, on March 19, 2009, the defendant filed for bankruptcy on behalf of Tri-State….Also, on March 19, 2009, the defendant filed the document known as a Voluntary Petition…[and] affirmatively stated that in the past year, Tri-State had not had any property that had been repossessed by a creditor or sold at a foreclosure sale.   However, in reality, a few weeks before, the properties had been sold at a foreclosure sale to new owners.   As a result of the bankruptcy filing, the bankruptcy court reversed the foreclosure sale and the defendant retained title to the properties, thus preventing the new owners…from collecting rent from those properties.

The defendant argues that "[t]here is no evidence to support" the statement in the PSR that "'as a result of the bankruptcy filing, the bankruptcy court reversed the foreclosure sale and the defendant retained title to the properties.'"   Def. Ltr. at 1.   He further argues that "[i]t does not appear from the docket of the bankruptcy case that the foreclosure was impeded…[and] [i]t is difficult to understand how the Government could allege that the omission was intentional, because the omission in and of itself had no impact upon the foreclosure proceeding."   Def. Ltr. at 3.   In his words, "Why would the Defendant lie when the lie would serve no purpose, inimical or benign?"   Id.

Upon careful review and further investigation, the government has determined that the defendant is correct with respect to certain issues, and the PSR is incorrect.   In fact, the foreclosure sale of the defendant's properties was scheduled for February 26, 2009.   The defendant exercised his right under New Jersey law to adjourn the sale for 30 days.   On March 19, 2009, the defendant filed a bankruptcy petition in which he fraudulently failed to disclose the foreclosure litigation.   On March 26, 2009, the defendant's properties were sold at a Hudson County Sheriff's sale.   However, unbeknownst to the Sheriff's Department or the purchasers, this sale took place after the defendant had filed the March 19, 2009 bankruptcy petition.   As a result, in order to ensure clean title, in September 2009 the purchasers applied to the Superior Court of New Jersey, Chancery Division for an order vacating the March 26, 2009 Hudson County Sheriff's Sale and ordering the Hudson County Sheriff's Department to hold a new sale for the properties.   The order was granted, and the Hudson County Sheriff's Department subsequently held a new sale of the properties.

However, these errors in the PSR, including the mistaken statement that the foreclosure sale preceded the bankruptcy filing, are of no consequence to the defendant's bankruptcy fraud conviction, because his bankruptcy filing on March 19, 2009 that omitted any reference to the foreclosure litigation was intended to defraud the creditors by preventing them from obtaining clean title to the properties.   Specifically, the failure to disclose the litigation anywhere on that petition was intentionally designed to delay the creditors from receiving notification of the filing.   The defendant's intent was clear and, in any event, the government is not required to show that the omission impeded the foreclosure proceeding. See e.g., In re Robinson, 506 F.2d 1184, 1188-1189 (2d Cir. 1974) ("[M]ateriality does not require a showing that the creditors were prejudiced by the false statement"); United States v. Mitchell, 528 F.3d 1034, 1040-41 (8th Cir. 2008) ("We have noted that materiality is readily established and does not require a showing that the creditors were harmed by the false statements")(citation omitted).

B.  The Defendant's Omission was Material

The defendant asserts that he "did omit indicating being involved in a lawsuit. But, whether intentional or unintentional the omission was immaterial."   Def. Ltr. at 6; see also Def. Ltr. at 4.   As the government discussed in detail in its Memorandum of Law dated June 19, 2015, the defendant did not omit or falsify a non-substantive detail in his filing. He intentionally omitted a concurrently impending foreclosure action that was the impetus for his bankruptcy filing.   The government refers the Court to its Memorandum of June 19, 2015 for the entirety of the government's position on this issue.   But in short, there is simply no question that the omission of the foreclosure action was material, because it related directly to the disposition of his assets and was designed to prevent creditors from obtaining clean title to his properties in an expedient manner.

C.  The Ineffective Assistance of Counsel Allegations

The defendant alleges that Jonathan Kaye, the attorney who represented him in connection with his plea, provided him with ineffective assistance of counsel.   First, he argues that Kaye provided him with "erroneous legal advice on the law."   Def. Ltr. at 4. The crux of his argument is that because the omission was immaterial to the bankruptcy petition, Mr. Kaye counseled him to plead guilty to "conduct [that] did not violate the law." Id.   However, as discussed above, the omission was material.   Accordingly, Mr. Kaye did not provide any "erroneous legal advice on the law."

Second, the defendant asserts that Mr. Kaye provided him with ineffective assistance of counsel during the plea hearing and cites to the following excerpt of the plea transcript to support his argument:

THE DEFENDANT:        When I filed the bankruptcy papers, I did it
                      myself.   I went down to the courthouse.   I
                      didn't have that much time.   I left out -- you
                      know, I left out the --

| MR. KAYE: | Excuse me for a moment. |
|---|---|
| THE DEFENDANT: | One second. |

(Counsel and defendant confer)

| THE DEFENDANT: | I filed the bankruptcy papers and one of the questions was, did I know of any litigation against my company in the past 12 months, and I knowingly signed off no [sic] on it knowing that there was a litigation against the company. |
|---|---|

Def. Ltr. at 3-4; see also May 27, 2011 Plea Transcript at pp. 29-30.

Specifically, the defendant asserts that this "colloquy at the plea-hearing highlight[s] the confusion and ultimate ineffective assistance of counsel" and claims that he was "attempting to explain something to the Court before [Mr. Kaye] interjected and made sure that the defendant would utter the words that satisfy the elements of the statute." Def. Ltr. at 4. He is wrong. There is no evidence that the defendant was confused during his plea allocution, and the defendant does not specify what he allegedly tried to explain to the Court before Mr. Kaye interjected. This excerpt simply demonstrates that Mr. Kaye conferred with his client, which is what all responsible attorneys routinely do during plea hearings. It certainly does not demonstrate in any way that Mr. Kaye's representation was ineffective.

## D.  Counts One and Two of the Information Are Not Related to Each Other

The defendant contends that the government is "absolutely wrong" for arguing that the bankruptcy petition was filed in connection with his mortgage fraud scheme. Def. Ltr. at 5. He states, "[t]he two purchased properties in the name of Tri-State Investments Assets LLC ("Tri-State"), which were the subject of the Bankruptcy petition, had absolutely nothing to do with the deals introduced to Meyer by Sammy and had nothing to do with straw purchasers." Id. The defendant simply misunderstands the government's recitation of the facts, because the government has never contended that the bankruptcy fraud charged in Count Two of the Information is related to the mortgage fraud scheme charged in Count One of the Information. The conduct underlying each of the charges is separate and independent of each other.

## E.  The Defendant Did Not Correct the Petition to Include the Lawsuit

The defendant also argues that the purpose of the bankruptcy petition that was filed on March 19, 2009 was to prevent an energy company from cutting off electricity to his ice cream shop. Def. Ltr. at 6. The defendant states that two weeks later, he "filed a corrected petition seeking a stay on the Electricity cut off and at the same time stay the

foreclosure on the properties he was hoping to salvage."   Id.   While it is true that the defendant filed an "Amended Schedule" on March 26, 2009, the same day as the foreclosure sale, he did not amend the petition to include the foreclosure suit.   See Def. Exh. A.   While the defendant did list the plaintiff in the foreclosure suit as a creditor holding a secured claim, the government contends that the defendant intentionally listed in the Amended Schedule the address of one of the properties, not the actual mailing address of the plaintiff or his lawyer, because the defendant wanted to further delay the plaintiffs in the lawsuit from receiving notice of the defendant's bankruptcy.

### F.   The Defendant's Perjury in Federal Court is Relevant

The defendant argues that the government has unfairly "attempt[ed] to boot strap testimony he gave in connection to his brother's appeal for resentencing" to demonstrate that "Gindi has been disingenuous through out his litigation process."   Def. Ltr. at 7.   As the government discussed in its previous submission, the defendant testified in an unrelated matter before the Honorable Kiyo A. Matsumoto, in which the Court found that the defendant "knowingly made materially false statements to the court under oath, while testifying in the proceeding and in a declaration submitted under penalty of perjury." United States v. Isaac Gindi, 2014 WL 2155025, at *2 (E.D.N.Y. May 21, 2014); see also Gindi v. United States, 2014 WL 508135 (E.D.N.Y. Feb. 4, 2014).   Judge Matsumoto's conclusion that the defendant lied while under oath in that case is relevant to the Court's assessment of the defendant's claims in this case and further highlights the defendant's lack of respect for the law.   Moreover, the defendant does not dispute that he lied to the Court in that case, but blames Mr. Kaye for allowing him to testify.   He states, "[i]t was another crucial mistake by his attorney to allow [the defendant] to testify in an unrelated matter while himself under Indictment."   Def. Ltr. at 7.   Notably, another attorney, not Mr. Kaye, represented the defendant when he testified in his brother's proceeding before Judge Matsumoto.

G.  Conclusion

For the foregoing reasons and for all the reasons submitted in the government's Memorandum of Law dated June 19, 2015, the government respectfully submits that the defendant's motion to withdraw his guilty plea to Count Two of the Information should be denied.

Respectfully submitted,

ROBERT L. CAPERS
United States Attorney

By:   /s/ Marisa Megur Seifan
     Marisa Megur Seifan
     Assistant U.S. Attorney
     (718) 254-6008

cc:  Albert Dayan, Esq. (by ECF)
     Clerk of the Court (SLT)